## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANTIONE SAMULE LEE,  
        Plaintiff,

Case No. 1:12-cv-077  
Weber, J.  
Litkovitz, M.J.

vs.

MARGIE PAULDINE, et al.,  
        Defendants.

**REPORT AND  
RECOMMENDATION**

        Plaintiff Antione Samule Lee, an inmate currently housed at the Belmont Correctional Institution, brings this action pro se claiming his civil rights were violated when he was incarcerated at the Hamilton County Justice Center (HCJC). The matter is before the Court on (1) defendant Margie Pauldine's motion to dismiss the complaint (Doc. 10), plaintiff's memoranda in opposition (Docs. 17, 19, 21), defendant's reply memorandum (Doc. 20), and plaintiff's supplemental response to defendant's reply memorandum (Doc. 25), and (2) the County defendants' joint motion for judgment on the pleadings (Doc. 23), to which plaintiff has not filed a response.

### I. Procedural History

        Plaintiff filed the complaint in this action on February 28, 2012, against HCJC nurse Margie Pauldine, R.N., and HCJC employees Lieutenant J. Richmond, Deputy C. Wells, Sergeant Chuck Penley, Captain Turner, Deputy J. Bedel, and Art Conley (the "County defendants") (Doc. 4). The complaint appears to allege that while plaintiff was incarcerated at the Hamilton County Justice Center, defendants violated plaintiff's constitutional rights by harassing him and discriminating against him based on his race (African-American) and transgender status; defendants violated his Eighth Amendment rights by imposing certain disciplinary measures on him; and defendants' actions harmed plaintiff by causing him to become depressed. *Id.*

Liberally construed, the complaint sets forth the following factual allegations: Plaintiff is a 33 year-old African-American, transgender individual. (Doc. 4 at 9). When plaintiff began his detention at the Hamilton County Justice Center on October 31, 2011, he was housed in the general population. (*Id.*). He was given a job as a porter in the medical unit. (*Id.* at 9). Plaintiff began to have problems with the inmate laundry porter in the medical unit, and he was threatened and harassed by the inmates and deputies and discriminated against by the deputies. (*Id.* at 10).

Deputy Richmond wrote a conduct report against plaintiff that falsely accused him of assaulting a staff member and fellow inmate by throwing urine on them. (*Id.* at 13-14). The report falsely stated that the medical staff had informed defendant Richmond that plaintiff is not a diabetic and that plaintiff had refused every blood sugar test ever offered to him. (*Id.* at 14).

On January 12, 2012, defendant Conley insisted that plaintiff have his blood drawn after a deputy falsely informed Conley that plaintiff had thrown urine on him. (*Id.* at 5). Plaintiff agreed to have his blood drawn. (*Id.* at 11). When dinner was served that day, Deputy Bedel threw plaintiff's food through the food trap, it hit the floor, and it was not edible. (*Id.*). Defendant Bedel refused to allow plaintiff to call his family on the telephone on January 12 and plaintiff was not allowed to use the phone the following day. (*Id.*). Bedel threatened plaintiff several times, called plaintiff "faggot bitches," and threatened to kill plaintiff. (*Id.*).

Plaintiff attended a disciplinary hearing on January 13, 2012. (*Id.* at 7). Sergeant Penley was hostile to plaintiff and refused to listen to plaintiff's side of the story. (*Id.* at 7). When plaintiff tried to explain that the write-up Sergeant Richmond had given him was false, Penley told plaintiff he could not win and used a racial slur against him. (*Id.* at 7-8). Plaintiff was found guilty of assault on a staff member and fellow inmate following the hearing. (*Id.* at 14).

Defendant Penley gave plaintiff a punishment of 20 days of "lock in" (administrative segregation) with "D.B.U." (a type of food loaf), and plaintiff was not given an appeal form. (*Id.* at 11, 14).

On January 13, 2012, Conley allowed plaintiff to be placed in a dirty cell in lock-in that had no hot water. (*Id.* at 5, 11). Plaintiff did not receive a clean uniform or bedsheets. (*Id.* at 7). The toilet was dirty and smelled like urine, there was no toilet paper in the cell, and the floor and desk were dirty. (*Id.*).

Deputy Wells and another deputy came to plaintiff's housing unit, they each searched plaintiff, they searched plaintiff's cell, and they threw his things around. (*Id.* at 8).

Prior to being written up, plaintiff, who is diabetic, had been receiving two sandwiches as well as juice with medication he took in the morning and afternoon. (*Id.* at 8). As of January 13, 2012, plaintiff was on a special, high protein 4000-calorie diet consisting of double portions. (*Id.* at 14). According to plaintiff, only a doctor can order or discontinue a special diet for an inmate, and the special diet is valid for one year. (*Id.*). After plaintiff was found guilty on the misconduct charge and given a punishment of 20 days of administrative segregation with a diet of "D.B.U.s," the disciplinary officer called defendant Pauldine and advised her in plaintiff's presence that he was to be served "D.B.U.s." (*Id.*). After receiving this directive, Pauldine called the kitchen and told them to stop sending plaintiff regular trays and to start sending him "D.B.U.s." (*Id.*). On January 13, 2012, plaintiff received regular trays for breakfast and lunch but for dinner he received a "D.B.U. burger" which was burned and not edible. (*Id.*).

Plaintiff was not allowed to use a razor to shave, he was not taken to the law library despite four requests, and he was taken to the hospital and subjected to a rape test because unnamed deputies falsely stated he had been raped even though he never told anyone he had been raped. (*Id.*

at 12).

Plaintiff asserts he is suing defendants for harassment and discrimination and for his conditions of confinement. (*Id.* at 8). Plaintiff contends that defendants' actions caused him to suffer from depression. (*Id.*). As relief, plaintiff seeks to recover $75,000 from defendant Conley, and he requests an injunction requiring Conley to designate a pod for homosexual inmates, to brief deputies on how to treat homosexuals, and to issue a letter of apology to plaintiff. Plaintiff also seeks to have Conley fired from his position at the Hamilton County Justice Center. (*Id.* at 6).

## II. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Furthermore, the plaintiff must provide in the claim "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly,* 550 U.S. at 555).

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *In re Sofamor Danek Gp., Inc.*, 123 F.3d

4

394, 400 (6th Cir. 1997). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

It is well-settled that a document filed by a pro se litigant is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . ." *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized that the Supreme Court's "liberal construction" case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se lawsuits. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989).

### III. The complaint against defendant Pauldine should be dismissed.

Defendant Pauldine moves to dismiss plaintiff's complaint against her pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 10). Defendant Pauldine argues that the complaint fails to state an actionable claim under 42 U.S.C. § 1983, which requires a plaintiff to plead (1) a violation of a right secured by the federal Constitution or laws, (2) committed by a person acting under color of state law. *See Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (citations omitted). Defendant Pauldine asserts that plaintiff complains of harassment, discrimination, and the conditions of his confinement, but he has not alleged facts which, if accepted as true, support a finding that she committed any act that violated plaintiff's constitutional rights.

A review of the complaint discloses that plaintiff's only allegation against Pauldine is that after plaintiff was sentenced to 20 days in administrative segregation for assaulting a staff member and fellow inmate, Pauldine called the prison kitchen pursuant to the directive of the disciplinary officer and told the staff to stop sending plaintiff regular trays and to start sending him "D.B.U.s."

5

(Doc. 4 at 14). Liberally construing the complaint and plaintiff's responsive memoranda, plaintiff alleges that by telling the kitchen to restrict him to a diet of "D.B.U.s" during his confinement in administrative segregation, defendant Pauldine (1) discriminated against him based on an animus against African-Americans and homosexuals in violation of his rights under the equal protection clause of the Fourteenth Amendment (*see* Doc. 25 at 4), and (2) subjected plaintiff to cruel and unusual punishment in violation of the Eighth Amendment. For the reasons set forth below, the Court finds plaintiff has failed to state a claim under 42 U.S.C. § 1983 against Pauldine for a violation of either of these constitutional provisions.

Initially, the Court finds that plaintiff cannot bring a claim against Pauldine for compensatory damages for emotional distress based on the allegations of the complaint. The Prison Litigation Reform Act states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward. *Flanory,* 604 F.3d at 254 (collecting cases).

Here, plaintiff alleges only that he became depressed as a result of defendants' actions. Plaintiff fails to allege in the complaint any underlying physical injury resulting from any defendant's act or omission. Plaintiff makes a vague allegation in response to the motion to dismiss that he "lost weight" as a result of the "D.B.U." diet (Doc. 25 at 4), but he does not assert that he suffered any deleterious health effects as a consequence of the restricted diet. Plaintiff is therefore precluded by 42 U.S.C. § 1997e(e) from seeking damages for the depression purportedly caused by Pauldine's act of instructing the kitchen to alter his diet. *See Richmond v. Settles,* 450 F.

6

App'x 448, 456 (6th Cir. 2011) (prisoner's Eighth Amendment claim for mental anguish purportedly caused by the deprivation of six meals over a seven-day period was barred by § 1997e(e) where the prisoner failed to show his physical health suffered as a result of the deprivation).

Moreover, even if plaintiff had suffered any injury as a consequence of Pauldine's action, he has failed to state a claim for violation of his Eighth Amendment rights by Pauldine.   The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care. . . ."   *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."   *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).   Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'"   *Richmond*, 450 F. App'x. at 455-56 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).   Therefore, to establish an Eighth Amendment violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities."   *Id.* at 454 (quoting *Rhodes*, 452 U.S. at 347).   He then must subjectively show the defendant acted "wantonly," with "deliberate indifference to the plaintiff's serious needs."   *Id.* at 455 (citing *Farmer*, 511 U.S. at 834).

"Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim."   *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).   Moreover, the discomfort experienced by a prisoner when some meals are denied over a short period of time does not rise to the level of "wanton

7

infliction of pain" so long as the prisoner continues to receive adequate nutrition. *Richmond,* 450 F. App'x. at 456. *See also Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (serving a prisoner one meal per day for fifteen days did not violate the prisoner's Eighth Amendment rights where that meal was sufficient to maintain normal health for the 15-day time period). Because it has been shown that "food loaf" meets the nutritional and calories requirements for individuals, a diet of food loaf does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Kidd v. Grogan*, No. 1:09-cv-099, 2009 WL 1033157, at *3 (S.D. Ohio April 16, 2009) (Spiegel, J.) (citing *Griffis v. Gundy*, 47 F. App'x. 327, 328 (6th Cir. 2002) (citing *Cunningham*, 567 F.2d at 656).

Furthermore, a prisoner who alleges a denial of medical care in violation of the Eighth Amendment must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs to prevail on a medical deprivation claim. *Estelle*, 429 U.S. at 106. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994).

Here, plaintiff has not made any allegations that show defendant Pauldine violated his Eighth Amendment rights. Plaintiff has not alleged any facts to indicate that the "D.B.U." loaves he received while in administrative segregation were inadequate to fulfill his nutritional needs. Furthermore, plaintiff has not alleged facts to show that by directing the kitchen to restrict him to a diet of "D.B.U.s," defendant Pauldine was deliberately indifferent to plaintiff's serious medical needs. Plaintiff makes a vague statement in response to the motion to dismiss that he "lost weight"

8

when defendant Pauldine discontinued the special 4,000 calorie diet he was on prior to being disciplined (Doc. 25 at 4), but he makes no specific allegations to show he suffered any harmful health effects as a result of being fed "D.B.U.s" for a 20-day period.   Because a diet of food loaf does not constitute a deprivation of life's basic necessities under the Eighth Amendment, and plaintiff has failed to allege facts to show that the change in his diet constituted deliberate indifference to his serious medical needs, plaintiff has failed to state a claim for an Eighth Amendment violation against defendant Pauldine.

Plaintiff has also failed to state a claim for relief against Pauldine for discrimination under the equal protection clause of the Fourteenth Amendment.   To state a claim for discrimination under the equal protection clause, the plaintiff need only allege sufficient facts to show that a state actor intentionally discriminated against him because of his membership in a protected class. *Simpson v. Ameji*, 57 F. App'x. 238, 239 (6th Cir. 2003) (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)).   *See also Brand v. Motley,* 526 F.3d 921, 924 (6th Cir. 2008) (an inmate retains the right to be free from "invidious discrimination based on race") (quoting *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974)); *Iacovone v. Wilkinson,* No. 2:03-cv-652, 2007 WL 490160, at *4 (S.D. Ohio Feb. 8, 2007) (citations omitted).   Although sexual orientation has not been identified as a suspect classification in the Sixth Circuit, homosexuals constitute an "identifiable group" for equal protection purposes.   *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012) (citing *Stemler v. City of Florence,* 126 F.3d 856, 873-74 (6th Cir. 1997)).   An equal protection claim brought on this basis is governed by rational basis review under which a "'plaintiff may demonstrate that the government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'"   *Id.* at

9

438 (quoting *Scarbrough v. Morgan Cnty Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (quoting *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)). To state an equal protection claim in the prison context, "a plaintiff must allege he was treated differently than other similarly situated prisoners." *Iacovone*, No. 2:03-cv-652, 2007 WL 490160, at *4 (citing *McCleskey v. Kemp, Supt. Ga. Diagnostic and Class. Center*, 481 U.S. 279, 292-93 (1987); *Wells v. Jefferson County Sheriff Dept.*, 159 F. Supp.2d 1002, 1008 (S.D. Ohio 2001)).

Here, plaintiff makes no allegations that show or permit an inference that Pauldine intentionally discriminated against him based on his race, his sexual orientation, or any other unreasonable basis by ordering the kitchen to restrict him to a diet of "D.B.U.s." Plaintiff alleges that the disciplinary officer directed Pauldine to restrict plaintiff's diet in this manner following plaintiff's disciplinary hearing and that Pauldine acted pursuant to that directive. Plaintiff does not make any allegations that show Pauldine acted for any reason other than the disciplinary officer's order. Nor has plaintiff alleged any facts that permit an inference that Pauldine acted with animus or ill will. Finally, plaintiff has not alleged any facts that show he was treated differently than any other prisoner placed in administrative segregation after being found guilty on misconduct charges. For these reasons, plaintiff has failed to state a claim for discrimination in violation of his equal protection rights under the Fourteenth Amendment.

Plaintiff has not alleged the deprivation of a constitutional right by Pauldine either under the equal protection clause of the Fourteenth Amendment or the Eighth Amendment. Defendant Pauldine's motion to dismiss the complaint against her pursuant to Fed. R. Civ. P. 12(b)(6) should therefore be granted.

### IV. The County defendants' motion for judgment on the pleadings should be granted.

The County defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P.

10

12(c). (Doc. 23). Defendants state that plaintiff appears to bring claims against them under the equal protection clause of the Fourteenth Amendment for disparate treatment based on his status as a "transgender African-American homosexual." (*Id.* at 2). Defendants argue that plaintiff's claims fail because he alleges that his privileges were taken away after he was found to have thrown a suspected bodily fluid on a corrections officer, nurse and another inmate (*Id.*, citing Doc. 4 at 11, 13), and plaintiff does not allege that other inmates who engaged in the same conduct were not denied their privileges. (*Id.* at 2). Defendants assert that they are entitled to qualified immunity from liability because plaintiff has failed to allege a violation of his constitutional rights.

### 1. The complaint fails to state a claim for relief against defendants Richmond and Penley for plaintiff's placement in administrative segregation.

The complaint alleges that Deputy Richmond (1) made comments in connection with the investigation of a grievance plaintiff had filed concerning searches performed by defendant Wells and another deputy and informed plaintiff these individuals had done nothing wrong (Doc. 4 at 8, 14-15), and (2) wrote a report falsely accusing plaintiff of throwing urine on deputies, a nurse, and a fellow inmate and falsely stating that the medical staff had told him plaintiff is not a diabetic and had refused every blood sugar test ever offered to him. (Doc. 4 at 13, 14). Plaintiff asserts that he is suing defendant Richmond for harassment, discrimination, and the conditions of his confinement. Plaintiff alleges that defendant Penley was hostile to him while conducting the disciplinary hearing, he refused to listen to plaintiff's side of the story and directed a racial slur against plaintiff, he gave plaintiff a punishment of 20 days in lock-up with a diet of "D.B.U.s," and he refused to give plaintiff an appeal form. (Doc. 4 at 7-8). Defendants argue that plaintiff has failed to state a constitutional claim in connection with his placement in administrative segregation and the accompanying allegations plaintiff makes against them because (1) plaintiff does not have a

protected liberty interest in the prison administrative procedures because the discipline he received did not impose an "atypical and significant hardship" on plaintiff as compared to other prisoners, and (2) verbal abuse or harassment is not actionable under the Eighth Amendment. (Doc. 23 at 5, 7-8).

An inmate retains a "liberty" interest for which he is entitled to due process "with respect to state-imposed prison discipline that rises to the level of an 'atypical and significant hardship on the inmate.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Arauz v. Ball*, 307 F. App'x 923 (6th Cir. 2009). A prisoner has no liberty interest in remaining in the general jail population and free of disciplinary or administrative segregation. *Kidd*, No. 1:09-cv-099, 2009 WL 1033157, at *3 (citing *Sandin*, 515 U.S. at 485-86). In *Sandin*, 515 U.S. at 486-87, the Supreme Court held that an inmate's placement in disciplinary segregation for 30 days did not present the type of atypical, significant deprivation that implicated a protected liberty interest because "(1) the inmate's 'disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody;' (2) the inmate's segregated 'confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction;' and (3) the inmate's segregation did not 'inevitably affect the duration of his sentence.'" *Hardin-Bey*, 524 F.3d at 792.

Plaintiff has failed to state a claim against either Richmond or Penley for a violation of his due process rights. Accepting as true plaintiff's allegation that defendant Richmond filed a false conduct report against him, "[t]he act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." *Spencer v. Wilson*, No. 6:11-00128-KSI, 2012 WL 2069658, at *6 (E.D. Ky. June 8, 2012) (citing *Freeman v. Rideout*, 808 F.2d 949, 952-53 (2d Cir. 1986) ("the

12

mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges.")). Plaintiff alleges that he appeared at a disciplinary hearing on the charges brought by defendant Richmond and was found guilty on the charges, and plaintiff does not allege any further involvement by Richmond in the disciplinary proceeding after the filing of the conduct report. (Doc. 4 at 7, 11, 14). Plaintiff therefore has failed to state a claim for a violation of his due process rights based on defendant Richmond's filing of a false conduct report against him. *See Spencer*, No. 6:11-00128-KSI, 2012 WL 2069658, at *6

In addition, plaintiff makes no allegations to show that his confinement in administrative segregation constituted an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life" so as to permit a finding that he was deprived of a liberty interest by either Richmond or Penley. *See Sandin*, 515 U.S. at 484. For these reasons, plaintiff has failed to state a claim for relief under § 1983 against defendant Richmond or Penley for a violation of his due process rights.

Plaintiff's allegations can be liberally construed as asserting an equal protection claim against defendants Richmond and Penley. However, the complaint fails to state a plausible claim under this constitutional provision against either defendant because plaintiff has failed to allege facts to show that he was intentionally discriminated against because of his membership in a protected class. Rather, plaintiff's own allegations demonstrate there was a rational basis for charging him with assaulting a fellow inmate and an officer and for disciplining him for this misconduct. Plaintiff does not deny he was involved in an incident during which a liquid substance he was holding in a cup was flung onto a fellow inmate and a corrections officer. Rather, plaintiff contends only that the substance was shampoo, not urine, and that it was knocked

13

out of his hand by an officer.  (Doc. 4-1 at 16).   Although plaintiff disputes various details

concerning the incident, his admitted involvement shows that defendants' acts of charging him with

assaulting a fellow inmate and a corrections officer and disciplining him following a hearing on the

charges satisfy the rational basis test.

The complaint includes additional allegations that when plaintiff told Penley during the

hearing that the charge Richmond wrote was false, Penley replied that he did not care, that plaintiff

could not win in the disciplinary proceeding, and that Penley had been working at the Sheriff's

Department for 20 years and "a nigger dont got shit coming."  (Doc. 4 at 7-8).   Accepting as true

plaintiff's allegation that Penley used a racial epithet during the hearing, this conduct, while

reprehensible, is insufficient to support an equal protection claim absent any allegation that plaintiff

was treated differently than similarly-situated prisoners by being disciplined for his misconduct.

*See Moore v. County of Muskegon,* No. 99-1379, 1999 WL 1253096, at *1 (6th Cir. Dec. 17, 1999)

(allegations that a state actor occasionally used insulting racial slurs towards a plaintiff were

insufficient to support a constitutional claim) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.

1987)).   *See also Al Humrani v. Kleeman*, No. 2:05-cv-203, 2006 WL 2528461, at *2 (W.D. Mich.

Aug. 31, 2006) (the use of racial slurs without some other conduct that deprives the plaintiff of an

established right fails to state a claim for a violation of the equal protection clause) (citing *Williams*

*v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Williams v. Kaufman County*, 86 F. Supp.2d 586, 598

(N.D. Tex. Feb. 7, 2000); *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D. N.Y. May 24, 1997));

*DeWalt v. Carter*, 224 F.3d 607, 612 n.3 (7th Cir. 2000) (the use of racially derogatory language

can be evidence of racial animus but does not, by itself, violate the equal protection clause).   Here,

the complaint includes no allegations to show that plaintiff was treated differently than

similarly-situated prisoners in the course of the disciplinary proceedings.   Thus, plaintiff's

14

allegation that Penley used a racial epithet against him is insufficient to support an equal protection claim against Penley.

For these reasons, plaintiff's equal protection claims against defendants Richmond and Penley should be dismissed for failure to state a claim for relief.

### 3.    The complaint fails to state a claim for relief against defendant Wells.

Plaintiff alleges that defendant Wells and another deputy came to plaintiff's housing unit, searched plaintiff and his cell, and "[threw] all [his] things around." (*Id.* at 8). Plaintiff contends that the deputies threatened him when he wrote a grievance about being searched. (*Id.* at 15).

Plaintiff has failed to state a claim for a violation of his constitutional rights based on the search conducted by Wells. The Fourth Amendment's prohibition on unreasonable searches has no applicability to a prison cell, and prisoners have no reasonable expectation of privacy. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Moreover, plaintiff has alleged no facts to show the search was unreasonable under the circumstances or that Wells conducted the search for an improper purpose or with a discriminatory motive. In addition, only prisoners' deprivations denying "the minimalized measure of life's necessities" constitute Eighth Amendment violations, and plaintiff does not show that the search by Wells rose to this level. *See Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003) (purposeful verbal humiliation during strip search did not render search constitutionally invalid). For these reasons, judgment on the pleadings should be granted in favor of defendant Wells.

### 4.    The complaint fails to state a claim for relief against defendant Bedel.

Plaintiff alleges that Bedel made threats against him, threw his food on the floor, directed a slur at him based on his sexual orientation, and denied him the opportunity to use the telephone for two days. (Doc. 4 at 7). The allegations of verbal harassment, threats, or verbal abuse described

15

by plaintiff, if true, demonstrate shameful and unprofessional behavior but do not constitute the type of infliction of pain that the Eighth Amendment prohibits. *See Kidd*, No. 1-09-cv-099, 2009 WL 1033157, at *3; *Roden*, 84 F. App'x at 613; *Johnson*, 357 F.3d at 545-46. In addition, "[e]xtreme deprivations" are required to make out an Eighth Amendment violation, *Harden-Bey*, 524 F.3d at 795, and refusing to allow plaintiff to use the phone and the other types of harassment and deprivations alleged by plaintiff do not rise to this level. Thus, defendant Bedel's motion for judgment on the pleadings should be granted.

### 5. The complaint fails to state a claim for relief against defendant Conley.

Plaintiff alleges that defendant Conley insisted that plaintiff have his blood drawn after a deputy falsely reported to Conley that plaintiff had thrown urine on him. (Doc. 4 at 5). Plaintiff further alleges that Conley allowed him to be placed in a dirty cell in administrative segregation that had no hot water. (*Id.*).

Defendant Conley contends that he cannot be held liable on plaintiff's claims against him under § 1983 because plaintiff seeks to hold Conley liable only in his supervisory capacity, and a claim under § 1983 cannot be premised on respondeat superior liability. (Doc. 23 at 8-9).

The doctrine of respondeat superior does not apply to § 1983 claims and may not serve as a basis for liability against a defendant sued in his supervisory capacity. *See Iqbal*, 556 U.S. 676; *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Section 1983 liability can only be premised on active unconstitutional behavior and not a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

Here, plaintiff fails to allege that Conley actively placed him in a dirty cell without running

water, knowingly ordered that plaintiff be placed in a cell with such conditions, or was even present when plaintiff was placed in the cell.   Plaintiff simply alleges that Conley allowed this to occur. Liability cannot be imposed on Conley on this basis.   As to plaintiff's allegation that Conley ordered that his blood be drawn after receiving a report from a deputy that plaintiff had thrown urine on the deputy, plaintiff has failed to allege a violation of his constitutional rights or any resulting physical injury based on that conduct so that plaintiff has failed to state a claim for relief against defendant Conley based on this conduct.   Finally, insofar as plaintiff seeks injunctive relief against Conley related to the conditions of his confinement at the Hamilton County Justice Center, plaintiff's claims are moot as he is no longer housed at that facility.   *Cardinal v. Metrish*, 564 F.3d 794, 798-99 (6th Cir. 2009).   For these reasons, plaintiff's § 1983 claims against defendant Conley should be dismissed.

### 6.   The complaint fails to state a claim for relief against defendant Turner.

Plaintiff makes no allegations against Captain Turner in the complaint.   The motion for judgment on the pleadings should therefore be granted in favor of defendant Turner.

### 7.   Plaintiff's remaining allegations fail to state a claim for relief against defendants.

The complaint includes allegations that plaintiff was not allowed to use a razor to shave, he was not taken to the law library despite four requests, and he was taken to the hospital and subjected to a rape test because "deputies" falsely stated he had been raped even though he never told anyone he had been raped.   (*Id.* at 12).   The complaint does not attribute any of these acts or omissions to the named defendants.   Accordingly, the complaint fails to state a claim for relief against defendants based on the above allegations.

Because the Court finds that the complaint fails to state a claim for relief against any defendant, the Court need not address the County defendants' assertions of qualified immunity.

17

**IT IS THEREFORE RECOMMENDED THAT:**

(1)   Defendant Pauldine's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 10) be **GRANTED.**

(2)   The County defendants' joint motion for judgment on the pleadings (Doc. 23) be **GRANTED**.

(3)   The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith.   *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date:  _1/4/2013_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANTIONE SAMULE LEE,                                  Case No. 1:12-cv-077
        Plaintiff,                              Weber, J.
                                                     Litkovitz, M.J.

    vs

MARGIE PAULDINE, et al.,
        Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Antione Samuel Lee
#656-889
Belmont Corr. Institution
Po Box 540
St. Clairsville OH 43950

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X  ☑ Agent
   ☐ Addressee

B. Received by ( *Printed Name*) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
   (*Transfer from service label*)

7002 3150 0000 8389 9562

PS Form **3811**, February 2004          Domestic Return Receipt          102595-02-M-1540